UNITED STATES of America, Plaintiff-Appellee,

v.

Donald Gene WORTHINGTON and James Randall Patterson, a/k/a "Rat", Defendants-Appellants.

No. 80–5306
Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit B

April 9, 1981.

Mark A. Pizzo, Asst. Federal Public Defender, Tampa, Fla., for Worthington.

James L. Watson, Tampa, Fla. (Court Appointed), for Patterson.

Frank W. Trapp, Sp. Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HILL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Donald Gene Worthington and James Randall Patterson appeal from their conviction for possession of a controlled substance, 1–(1–phenylcyclohexyl)–pyrrolidine (which we will call PHP), with intent to distribute (21 U.S.C.A. § 841(a)(1) (1972)), and conspiracy to distribute same (21 U.S.C.A. § 846 (1972)). The district court sentenced Worthington to a four-year term of imprisonment plus a four-year special parole term on each count to be served concurrently. Patterson was sentenced to three years plus a three-year special parole term on each count, also to run concurrently. Defendant Patterson argues that the trial court erred in denying his motions for severance. Worthington complains of a variance between the indictment and proof. Worthington also complains that the imposition of a special parole term for conspiracy is illegal. We agree that the special parole term for conspiracy is unauthorized, but affirm the convictions and sentences in all other respects.

In June, 1979, a confidential informant assisted the Lake County, Florida, Sheriff's Department in arranging a purchase of controlled substances. The informant telephoned appellant Worthington to arrange a purchase of drugs; these conversations were recorded. During these conversations, Worthington referred to "rock" or "canab" (identified as street terms for the drug) and mentioned Rat or Randall as his source for the drugs (later identified as appellant Patterson). One week later the informant and an undercover agent met with Worthington who stated that he was trying to locate Randall. During this meeting Patterson arrived, discussions took place concerning the details of the sale, and a second meeting for that night was arranged. At the second meeting Worthington and Patterson were present. Patterson went outside, met a third co-defendant, Balliett, and returned with a bag of rock-like substance. Patterson sold the substance to the agent, took the money, pocketed it and left. Chemical analysis later revealed that the substance was not the drug for which the informant negotiated (which we will call PCP), but that it was another controlled substance (PHP).

## I.

Appellant Patterson complains that it was error not to sever his trial from that of Worthington because of the damaging

reference to him contained in the telephone conversations. The severance argument is without merit. Hearsay is the only colorable objection to the telephone conversations. The district court admitted the conversations only after having received independent evidence of a conspiracy and Patterson's participation therein in accordance with the procedure for admitting co-conspirator hearsay established in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). We believe that the independent evidence of a conspiracy and Patterson's participation therein is sufficient to admit the telephone conversations under the *James* standard. The agent's testimony shows that Patterson participated in the negotiations for drugs and actually produced the drugs at the sale and accepted the purchase money. Patterson's argument that the telephone conversations predate the time when he manifested his involvement in the conspiracy does not change our conclusion. As the Supreme Court stated in *United States v. United States Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746 (1948):

> With the conspiracy thus fully established, the declarations and acts of the various members even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy.

(footnote omitted). *See also United States v. Cassity*, 631 F.2d 461, 464 (6th Cir. 1980); *United States v. Martinez*, 481 F.2d 214, 221 (5th Cir. 1973), *cert. denied* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974) (dictum).

### II.

■ Appellant Worthington complains that there was a fatal variance between the indictment (charging offenses with respect to the drug PHP) and the proof (appellant's negotiations to sell rock, canab, etc.) and that there was insufficient evidence of his intent to distribute PHP. A variance does not require reversal unless it affects substantial rights of the defendant. *See, e. g., Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). When faced with a similar argument, the Seventh Circuit held that substantial rights of the defendant were not affected if the evidence showed that the defendants, despite their denials, were aware of the nature of the substance they possessed. *United States v. Moser*, 509 F.2d 1089 (7th Cir. 1975). The government's evidence shows that PHP is an analog of PCP (they are similar in chemical structure), that the substances were ingested in a similar manner, and that they produce similar effects upon the user. Furthermore, since Worthington concedes he was dealing in controlled substances, the jury might legitimately infer "that one who possesses dangerous drugs knows what it is." *Id.* at 1089. *See also United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976). Finally, if appellant deliberately chose not to discover the precise nature of the substance so that he could later claim ignorance, he may be chargeable with knowledge. *Id.* We believe that there was sufficient evidence from which the jury could conclude that Worthington knew the nature of the substance and intended to possess PHP as charged in the indictment. We therefore reject his variance argument.

### III.

■ The imposition of the special parole term upon Worthington and Patterson on the conspiracy count is not authorized and must be reversed. *See Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). On remand, the district court is directed to strike from the sentence the special parole term imposed under Count II.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.